### BELCHERTOWN.

Where an election was controverted on the ground of a deficiency of ratable polls, and the member neglected to furnish the petitioners with a list of those persons whom he considered as ratable polls, agreeable to the requisition of the committee on elections; the election was adjudged void, on *prima facie* evidence of the insufficiency.

Where three members were elected at separate ballotings in a town, which contained more than a sufficient number of ratable polls to entitle it to two, but not enough to entitle it to three, it was held, that the deficiency affected only the right of the member last chosen.

Committees of the house should return all papers with their reports.

THE election of Eldad Parsons, the last chosen of the three members returned from the town of Belchertown, was controverted by Elihu Sanford and others,[1] on the ground, that the said town did not contain the requisite number of ratable polls, to entitle it to three representatives.

This case was referred[2] to the January session, at which time the committee on elections made the following report[3] : —

" The committee on elections beg leave to report, that the inhabitants of Belchertown did, in May last, elect three representatives by separate ballots, against whose election a petition was presented, at the last session of the legislature, on the ground, that said town did not contain 600 ratable polls. At the last session of the legislature, the petitioners produced proof that said town contained but fourteen school districts, and also depositions of fourteen persons, one in each school district, of the number of ratable polls in their respective districts. The aggregate of the numbers, in the fourteen districts thus shown, was 553. The petitioners, at the same time, exhibited a list of 553 names, corresponding with the depositions. As it appeared that the three representatives were chosen by separate ballots, the committee considered the result of their inquiry could only affect the right of Eldad Parsons, the member last chosen. They, therefore, required said Parsons to furnish the petitioners, within two months, with a list of all the persons whom he considered as ratable polls,

---

[1] 31 J. H. 55.  [2] Same, 104.  [3] Same, 295.

whose residence was in Belchertown, at the time of his election. They also required the petitioners, within two months after receiving said list, to furnish said Parsons with a list of such names as were on the list furnished them by said Parsons, and against whom they meant to object, as not being ratable polls. The said Eldad Parsons has not complied with the instructions of the committee, but wholly neglected them. Mr. Phelps, who appeared before the committee this session on his behalf, produced a list, containing 620 names, but without any evidence that a sufficient number of them were ratable polls, to authorise the town to send three representatives. The committee are of opinion, that it will be impossible to investigate controverted elections, unless the rules of evidence which they direct are complied with; and they are also of opinion, that, as said Parsons has wholly neglected to comply with their instructions, the evidence in the aforesaid depositions ought to be considered conclusive, and that said Eldad Parsons is not entitled to a seat."

On the fourteenth of February, a motion was made in the house,[1] by Mr. Sprague, of Salem, (chairman of the committee on elections,) that the papers relative to the Belchertown election be taken from the table, and delivered to the committee on elections; on the ground, that oral evidence and depositions are not admissible before the house, which must act upon the report of facts, as stated by its committee.

Mr. Whitman, of Boston, urged that the depositions and papers ought to remain on the table, as the property and for the use of the house.

The Speaker (Hon. Joseph Story, of Salem,) gave his opinion, that the papers ought to remain in the possession of the house.

Mr. Sprague explained, and said that he conceived that the depositions ought not to be used, as the oral evidence which explained them could not be introduced.

Mr. Davis, of Boston, thought that the depositions, and all the papers used by the committee, ought to be before the house; otherwise it could not correct the errors of judgment of its committee, nor their sinister intentions, if any they had.

Mr. Phelps, of Belchertown, wished the papers to be before the house, that he might have the privilege of examining them.

Mr. Davis said it was the duty of committees to lay all papers submitted to them before the house, when they make their report.

The Hon. Speaker, being called on, decided, that committees ought to return all papers with their reports.

Mr. Greene, of Berwick, appealed from the decision of the chair; not that he was against it, but because he wished the question settled. The decision of the speaker was supported, without opposition.

Mr. Sprague withdrew his motion, and the case was postponed from time to time,

[1] 31 J. H. 313, 314.

till Wednesday, February 20, at which time,[1] the order of the day was called for on the Belchertown election, and Mr. Phelps introduced a list of the ratable polls of Belchertown, certified by the selectmen, which, he said, differed in several instances from that furnished by the petitioners; that in one of the districts, called Hunting's, the list of the petitioners contained twenty-one less than the number belonging to it. He objected to the course pursued by the petitioners; individuals had been employed to take the number of polls in their respective districts, and had made out a list, which, at best, was very inaccurate; and these individuals had sworn to the numbers in their districts; and, though they may have stated what they believed to be the truth, they might have adopted different modes of estimating who were ratable polls. From the form of their depositions, it would seem, that they had excluded all those inhabitants of the town, who happened to be out of town on the first day of May. He was satisfied this must have been the case in Hunting's district, where there was so great a deficiency in the petitioners' list; and accounted for this deficiency, by observing, that this district was annexed to Greenwich, for parochial and military purposes; and that there was a training in that town, on the first of May, which called those liable to do military duty in Hunting's district out of Belchertown.

Here it was observed, that, on the statement of Mr. Phelps, the subject ought to be recommitted.

Mr. Sprague said that he conceived the report contained all the facts that were essential in the case, and that it was substantially true. The committee considered that the depositions raised a strong presumption against the election, and therefore required of Mr. Parsons to furnish the list, as stated in the report.

Mr. Webb, of Weymouth, said he saw nothing in the statement of Mr. Phelps, that ought to invalidate the report. The petitioners had, in his judgment, produced sufficient proof that there were but 553 ratable polls in the town. The committee then gave to Mr. Parsons a fair opportunity to furnish them with the list of ratable polls. This course he thought correct, and such as reflected honor on the committee. He conceived that, as Mr. Parsons had not furnished the list, required by the order of the committee, which he might so easily have done, the evidence ought to be conclusive against him, and his seat ought to be vacated, even if there were a thousand ratable polls in the town.

Mr. Fay, of Cambridge, said he was one of the committee, and that he did not concur in the report. He had no idea that this house have the right to set aside the election of a member, as void, for any misconduct after his election. This would be an infringement, not only on his rights, but, what was of more importance, the rights of the corporation that sent him. If the member from Belchertown had done anything that required it, let him be expelled, or dealt with as his misconduct, in the discretion of the house, may require. The question is—Had Belchertown 600 ratable polls? If it had, we cannot vacate the seat of its representative. He believed it had; and he was satisfied, from the statement of Mr. Phelps, and the papers that had been before the committee, that some, at least, of the deponents, had acted under, at best, a gross mistake; that it was evident that some of them excluded those persons, who happened to be out of town on the first day of May; that the form of the depositions admitted this construction in all of them, and afforded a shelter for the deponents, in taking their account in this manner; and that he believed this mode of proceeding, by the petitioners, would account for the deficiency of their list. For his part, he was

[1] 31 J. H. 350.

fully satisfied, that the list of ratable polls, certified by the selectmen, whose official duty it was to make it correct, ought to be received as the guide of the house in the case.

Mr. Dwight, of Springfield, thought that the subject ought to be recommitted.

Hon. Mr. Thatcher, of Warren, said the committee had adopted, in their report, a very untenable and reprehensible ground. That the real question was, whether there were a sufficient number of ratable polls, in Belchertown, to authorize its sending three members to this court? That the committee appeared, by the report, to have waived this question, and, with their " little brief authority," to have resolved themselves into a kind of court martial, and proceeded to try Mr. Parsons for misconduct, instead of inquiring into the merits of his election; and to report, that he should be disfranchised, not for being illegally chosen, but for disobedience of their orders.

Mr. Thatcher was called to order. The Speaker observed, that the course of his argument appeared to be leading rather to a trial of the committee than of the merits of the election; but as the committee had introduced their instructions into the report as an argument for vacating the seat of the member in question, he conceived the gentleman had a right to meet that argument.

Mr. Bangs, of Worcester, said, that in every question there are parties. He considered the member whose seat is contested as the party, and not the town. The petitioners ought not to be called upon to prove negatively, that there are not so many ratable polls, but the member to prove affirmatively. Is the certificate of the selectmen conclusive? If so, there is an end of the question, and any town may swell their representation as they please. But he believed the house had a right to go behind the return, to examine into facts and make any deductions that the case may require. Have the committee taken the proper course to make the inquiry? He thought they had. He put the depositions out of the case; the petitioners had nothing to prove. The objection to the course prescribed by the committee, he considered as groundless. The selectmen misconstrued the order. They were only required to give a list; not of those who happened to be in, or out of town, on the first of May; but of the *bona fide* ratable polls at that time on the list. There are polls not ratable above sixteen years of age: No exceptions are made in the certificate. It is not shaped so that any specific objection can be made to it, or any certain inference drawn from it; and therefore ought not to be received as a rule of action.

Mr. Davis said, that when he was first a member of this house, it was a rule, that the return of the selectmen should be conclusive, unless fraud could be shown; since which, a law has been passed, requiring the selectmen to make their returns under oath. It is now contended that the return of the selectmen, made under all these solemnities and formalities, has no binding force upon this house. There was, in his opinion, on the face of this report, the evidence of wicked proceedings in the transaction. Why were the depositions taken with reference to the first of May? Because there was known to be a training on that day, which obliged a number of ratable polls to be out of town. Upon these depositions the committee have undertaken to require the member to produce a list of ratable polls; when perhaps no two men would agree what is a ratable poll. What is the result of the report of the committee? That the member has not complied with their rules; not that they have proved his seat is vacated for want of a sufficient number of ratable polls. He was far from justifying a disobedience of the orders of the house or of their committees; but if members were guilty of such conduct, let them be proceeded against in the usual way; not by declaring their seats void *ab initio* for an offence after their election.

Hon. Mr. Bigelow, of Medford, rose to state a radical objection to the report, which

he thought subversive of every sound principle of our rights of representation. The committee go upon the ground, that the sitting member is bound to vindicate his right to a seat in the house, instead of requiring the petitioners to disprove the right of a member duly returned as such.

Mr. Sprague. — The committee have adopted in this case the rule that has been uniformly pursued.

Mr. Moody, of Saco, contended that the same principle was adopted in the case of West Springfield.

The question was then put; shall the report be agreed to? And there being 89 yeas, and 98 noes, it was not agreed to.

On the twenty-first of February,[1] Mr. Green moved, that the house reconsider the vote of yesterday, rejecting the report of the committee, on the Belchertown election, and stated his reasons. That the report was predicated on the same principles that were adopted in the Charlton election last year. He wished the question decided on the principles of truth, equity, and law. If Belchertown has 600 ratable polls, the member is entitled to his seat; if less, he is not. Does it appear that the town has this number, or not? It appears by proof positive, produced by the petitioners, that there were, at the proper and legal time of making the estimate, but 553 ratable polls in Belchertown. This evidence ought to be conclusive, till invalidated. An opportunity was given to the member to show, if the facts were so, that there were a sufficient number of ratable polls to make good his election. The committee could not have pursued a course more fair and liberal than they have in this case. The petitioners say, there are but 553 ratable polls. The town says, there are 600. The committee say to the sitting member, you must produce a list of what you consider ratable polls, within two months, that the petitioners may point out who are not ratable polls. If the member has not done this, he has not done his duty. Mr. Phelps, a gentleman for whom I have the greatest respect, produces a list containing 620 names, said to be above sixteen years of age; but this neither complies with the order, nor does it furnish proof that there are 600 ratable polls. He wished the question decided upon the simple principle of Belchertown having or not having 600 ratable polls. Not producing evidence that they have this number, ought to be considered as evidence that they have them not. This is precisely the same principle on which the Charlton election was decided. It was required of its member to furnish a list of a sufficient number of ratable polls to substantiate his right to his seat. The same principle was adopted in the case of Bradford, and ten days allowed to the petitioners to strike off those who were not ratable polls. Whether it be for a contempt of this house, or of its committee, or because it was not in the power of the member from Belchertown to produce a sufficient number of ratable polls, (which I believe to be the case,) I hold that his seat ought to be vacated.

Mr. Morris, of Springfield, moved, that the further consideration of the motion of Mr. Green, be postponed to the next session. For postponement, 81, against it, 151.

Mr. Bangs thought the judicial decisions of the house should be first attended to, and that it ought to proceed to correct an erroneous decision.

Mr. Davis.—It appeared to him that gross attempts had been made by the minority of this town, to defeat the rights of the majority. The principle, in this case, has been to take the number of ratable polls actually in town on the first of May, when it was well known that a considerable number of the militia were out of town; precisely

[1] 31 J. H. 358, 359, 360.

as though the case had happened in Boston, and the number of ratable polls in town should be taken on commencement day, when the greater part of its inhabitants attended that anniversary.

Mr. Sprague rose and stated, that the committee neither received nor gave any instructions on the subject of training; and the depositions referred, generally, to the ratable polls, without reference to their absence, on the first day of May, or on any other day.

Mr. Davis proceeded :—The committee have enjoined a duty on the member which they had no right to do. The question is not between the house and the member; but it is between the house and the people of Belchertown. If their representative has done any thing wrong, the house has a right to proceed against him for his misconduct. The case of West Springfield has been cited. In that case, it was not enjoined on the member to furnish a list. It was granted to him as an indulgence, at his request, to give him an opportunity to explain what appeared doubtful.

Mr. Smith, of West Springfield, wished to correct a mistake of Mr. Davis. The fact was, the petitioners had no evidence, and asked the indulgence to bring proof. The member took the ground, that the petitioners must prove that there were not ratable polls enough; the committee said no, the member must prove there were enough.

Mr. Moody.—An objection has been made to taking the ratable polls on the first day of May; this has no weight. It is the day required by law for taking the polls. A minor who should be sixteen years old on the second day of May could not legally be taken as a ratable poll. He could not see what the odds was between a return of selectmen and a return by the deponents in this case. He saw no evidence, that any were omitted from the circumstance of their being out of town; and thought no man of sense would omit taking down men thus absent. He should think the number taken by fourteen men, who took it under oath, and with the knowledge of the inhabitants in their respective districts, was, at least, as likely to be correct as that of the selectmen. The member said, he had a right to his seat; the petitioners said, he had not. It has been the rule of this house, to go behind the returns. We are made the judges of the elections of our members. This cannot be done, without going behind the returns. It has been said, the committee have not the right to prescribe rules for procuring evidence: I must think they have this right; and that they have acted correctly in this case.

Rev. Mr. Foster, of Littleton.—I want further information of facts.

Mr. Phelps rose, and stated, that the selectmen of Belchertown considered every male inhabitant above sixteen, and not a pauper, to be a ratable poll.

Mr. Foster proceeded :—

If it be a fact that the fourteen men who took the district lists really did omit those who were out of town on training, it would be notoriously wrong; but I see no evidence of such a fact. I cannot think that any man would be so base.

The certificate of the selectmen was read from the chair, by request of Mr. Phelps.

Mr. Whitman.—It is important to take the constitution and the law and compare them together and see how they apply to the case.

The constitution does not refer the number of ratable polls to any particular day. The time not being fixed by the constitution, it must be fixed by expediency. Here men may honestly differ. Some take the day of election; others the first day of the month; others adopt a more liberal construction, and say, they will take one, two, or three months, to ascertain their ratable polls. It is therefore a question of expediency, left by the constitution to this house, to adopt a rule for the measure of time; and the towns, as our primary assemblies, have necessarily the same right; and we

are bound to respect their right. I ask gentlemen of this house, on what principle we can interfere with a rule adopted by a town, agreeable to the constitution, where no fraud appears, and set aside its returns? The selectmen of Belchertown come forward and lay before us the evidence taken under oath, and in fulfilment of their duty. I have always been of opinion, that this must be conclusive, and could not be impeached except for fraud. But the committee have admitted the evidence of fourteen men, who, I am willing to admit, acted honestly. They say, that on the first day of May, they found but 553 ratable polls.

How, then, if we take this as evidence, will it weigh against the certificate of the selectmen? What is the rule adopted by your courts, by all men of liberal upright minds? If there is a doubt remaining, it should preponderate in favor of the established order of things; in favor of him who holds possession of that to which he has a supposed right. Apply this rule to the present case, and I would ask, if we must not decide in favor of the honorable member's holding his seat, who is returned as legally and properly chosen? In doing this, we need impeach none of the evidence.

I apprehend the committee have exceeded their authority in their injunctions on the member. The committee have required Mr. Parsons to furnish evidence unknown to our laws, as stated in their report. They should have said to him, produce the evidence of your title to your seat; and left it with him to produce such as he should think proper, or such only as the law requires, and rejected any improper evidence, if offered. To prescribe and limit the evidence, is, in effect, prejudging the cause. I therefore apprehend that the committee have prescribed a rule illegal and improper.

Then what conclusion do they draw? That the member's seat should be vacated, because he has not complied with their order. Certainly this is going too far. Should not the member have even the liberty of appealing to this house?

Mr. Sprague rose to state facts. He was employed by the petitioners of Bradford; the committee ordered the members from Bradford to furnish a list of ratable polls; the petitioners agreed to furnish a checked list in ten days. The committee endeavored to follow the same principle in the case of Belchertown. They did not mean to make a rule for the house; but for their own proceedings.

Mr. Willis, of New Bedford.—The deponents swear to nothing more than their own districts. It is therefore no more than the evidence of one to the same fact, in effect; and ought not to weigh against that of the selectmen.

Mr. Bigelow.—I conceive the report to be bottomed on one of two principles; either that the proof of the number was not sufficient, or that it was weakened. If the proof is flung on the sitting member, we renounce all our rules of municipal law; we adopt the principle, that a man shall be held to be guilty till he is proved innocent. It has been suggested, that the member's seat ought to be vacated because he has not complied with the orders of the committee. This is too monstrous to be admitted.

The argument at the close of the report, that the committee could not ever get through with the business, has no weight. They should have pursued a correct principle, at all events. Duty is not measured by time. While the member has even a colorable title to his seat, he ought, upon every sound principle, to hold it.

The question is not, what he has proved, or omitted to prove; but, have the petitioners proved beyond a doubt, that there were not 600 ratable polls in Belchertown? Certainly they have not proved this. Every word they say may be true, and yet the member entitled to his seat.

A town may take the valuation for the purpose of assessing their town tax, when they please—the 7th of May if they choose—and fifty persons might be ratable polls

on that day, who were not on the first. There is an equivocation in the depositions, which makes them uncertain.

I beg gentlemen to consider the consequence of considering the first day of May, for instance, as the time for taking the ratable polls. Is it not easy for a number of individuals to deprive a corporation of its right? Suppose, for instance, Salem; might not enough of the inhabitants leave the place to reduce the number of its representatives to six.

It has been decided, over and over again, both in the house, and in committees, that the day of the election (and not the first, or any other day of May,) is the day on which the number of ratable polls is to be taken, in estimating the number of representatives that any town is entitled to send to the general court.

The number of ratable polls in Belchertown has been taken on the first day of May, which happened, in this case, to be the day of general training throughout the state.

Mr. Bangs.—It appears to me that some are for making it a question, whether we shall ever sustain any petition against an election in this house hereafter.

I will suppose that there had been no committee, and that the inhabitants were before the house and alleged that the member was entitled to his seat; what more could we require of them than they have already done? They would only bring the evidence of individuals; the officers might be against them. Against this evidence could only be produced the return of the selectmen. They say their members are duly chosen. If we stop here we make the selectmen the conclusive judges. They may include minors but five years old; they may choose as many members as they please, and what can the petitioners do? It is said here, we have but presumptive evidence. I do not know what more this whole house could do than the committee have done. We could say, give us a list of names. Let us then hear the objections on one side and the other, and judge of the result.

Mr. Churchill, of Milton, said he had always understood, that the first day of May was the day, upon which the ratable polls of every town are to be counted. He never till now heard a contrary position maintained or suggested. He did not precisely like the form of the report. It was in part predicated on the number of ratable polls at the time of the election, and not on the first day of May. He thought the report ought to have been in a different form.

Mr. Dutton, of Boston.—I do believe that this report contains principles, which, if adopted, we shall have occasion to regret hereafter. The sitting members brought with them evidence that they were chosen, and that Belchertown had a right to send three members. The depositions, are in substance, the evidence of one man. On the other side we have that of the board of selectmen, which we have heretofore considered as conclusive. We ought then, at least, to be satisfied with it, till it is disproved, beyond all reasonable doubt. I go further. I consider it as binding in all cases, where no fraud appears. In one of the depositions there is a difference of twenty-one. This would not have been the case, unless those were omitted who happened to be absent on the first day of May. The language of the depositions and of the committee authorize this supposition. They might as well have required the number of those who were in town at 12 o'clock, on the first day of May. I have in my hands the certificate of the selectmen. This is all that the member was bound to produce. But what do the committee require? Their report is absurd. The member could only be considered as a member of this house: He was liable to no injunction of the committee.

Mr. Howe, of Sutton.—I had the honor of being one of the committee. We have adopted the rules that were adopted the last year, and sanctioned by the house. We thought them accurate, and therefore followed them. I will refer to the facts. What

did Belchertown do ? [Here he read a deposition in the case, and called attention to the caption, in which it appeared, that the selectmen of Belchertown were notified to attend, but did not attend till it was completed. He read, also, the order of the committee and the return thereon ; and enumerated instances of several on the list of the selectmen, that were proved not to be ratable polls.]

It is impossible that these fourteen persons should have gone on and taken the list of ratable polls on the first day of May, seven days before the town-meeting, and before it was known whether they would send one, two, or three members. The list was taken afterwards, and contains the names of the ratable polls in the several districts with reference to the first day of May.

Mr. Mills, of Northampton.—The question we have to decide is, whether Belchertown had a right to send three representatives ? These representatives must be considered as entitled to their seats, unless the contrary be shown beyond all doubt. In comparing the evidence, which ought to weigh the most ? The evidence of the deponents, or that of the selectmen, who may have assessed the polls liable to be taxed ? Certainly the latter. There is another fact that corroborates the certificate of the selectmen : The committee were told, that there were names on the list of the selectmen, that were not on the list of the petitioners. If it is not shown that there were twenty or more of the list of the selectmen who were exempted from taxes the year before, that list stands unimpeached and conclusive in favor of the sitting member. There is one part of the report, to which I have weighty objections ; that which recommends the member's expulsion, for non-compliance with the orders of the committee.

Mr. Ripley, of Waterville.—The principles which arise in this case are simple. The petition was committed in the usual course. The committee pursued a course chalked out by their predecessors in the house, for which they are not responsible. Why, therefore, should we be so capricious as to deviate from the precedents already established ?

Mr. Davis asked if Mr. Ripley meant that any former committee had passed such an order as in this case, without the authority of the house, or a joint committee, for so doing ?

Mr. Ripley proceeded :—

I have stated the former course, as I understood it to be stated, before, without contradiction. That, however, is not material.

The member in this case is the party, and Belchertown in the nature of a party. The committee directed the selectmen to furnish a list of ratable polls—a legal document which they had in their possession—and gave notice to those concerned. The selectmen did not furnish this evidence. It was therefore the duty of the committee, upon every principle of law, to presume that this evidence, if produced, would make against them.

Mr. Davis rose to state a fact. He referred to the order read before by Mr. Howe, and contended that a committee had no authority to make such order without the direction of the house ; that their functions ceased when the house rose, and that the order in question was altogether supererogation and void.

Mr. Sprague rose to explain, and said, that two orders appeared in the case;[1] that

---

[1] June 14, A. D. 1810.—The committee on elections hereby give notice to Eldad Parsons, the sitting member from Belchertown, that he is to give to Henry Mellen, before the first day of August next, a list of ratable polls in the town of Belchertown, on the day of representative election in May last. Said Mellen is to furnish said Parsons with the names of the persons against whom the petitioners object, as not being

one only, that referred to in the report, was acted upon or had any thing to do with its merits; and that that was issued by the committee while the house was in session.

The Hon. Mr. Thacher.—It was with great surprise that I perceived a motion to reconsider this question. I presume this is the result of concert. I fear some of us may vote with too little reflection. It is of extreme consequence that we adopt correct principles and adhere to them, especially as they are now to be reported and published as the rules of action for our constituents. It appears to me extremely clear, that we are bound to respect the returns of the selectmen, unless it can be clearly and specifically shown wherein they are wrong. The order of the committee was issued without authority. They acted in the recess without authority from the house; an assumption which I think deserves our censure. But to pretend that the member's seat ought to be vacated for not complying with this order, is monstrous.

Mr. Sprague rose and said, that the house gave a general order to their committee to send for persons and papers, and to sit during the recess in certain cases. The

ratable polls, before the first day of October next, and both parties are to be ready with their own evidence on the second day of the winter session.

By order of the committee on elections.

JOSEPH E. SPRAGUE, *Chairman.*

On the petition of Henry Mellen and others, against the election of Eldad Parsons, the third representative from Belchertown, and against his having the right to hold his seat in the legislature of this commonwealth, as a representative from said town, for the want of a sufficient number of ratable polls residing in said town on the first day of May, A. D. 1810, to entitle the said town to the third representative, as aforesaid :

Ordered, That the selectmen or assessors of said town of Belchertown furnish and deliver to Henry Mellen, or Elihu Sanford, the agents of said petitioners, on or before the fifteenth day of November next, a list of all the ratable polls, with their christian and surnames written at full length, constitutionally resident in said town on the first day of May last past ; and the said Henry and Elihu shall, on or before the fifteenth day of December next, furnish to the said selectmen or assessors, or to either of them, the names of those to whom they object, and shall contend that they had no right to be considered as ratable polls, before the committee on elections.

The said Henry Mellen is hereby directed to serve this order, by leaving with one of the said selectmen or assessors of said town, and with Eldad Parsons, a copy of the same, on or before the fifteenth day of October, now next, and cause this order, with his doings therein, to be returned to either of the subscribers, on or before the third Wednesday of January next.

ESTES HOWE,
JOHN NEVERS,  } Committee on Elections.
ABRAHAM LINCOLN, }

Boston, June 5th, 1810.

HAMPSHIRE, ss. *Belchertown, October 15th,* 1810.—Then I delivered to Wright Bridgman, one of the selectmen of Belchertown, a copy of the within order, and at the same time I delivered to Eldad Parsons, a copy, in compliance with the order of the committee within named.

*Attest,* HENRY MELLEN.

HAMPSHIRE, ss. *January 18th,* 1811.—This may certify, that the selectmen or assessors have neither of them ever furnished us with any list of the ratable polls with their christian and surnames, constitutionally resident in the town of Belchertown, on the first day of May last, nor have they to our knowledge paid any attention to the within order.

*Attest,* HENRY MELLEN,
ELIHU SANFORD.

order of the house was read from the chair and authorized the committee to "send for persons and papers."

Mr. Thatcher proceeded :—

I say, that when Mr. Howe or any other person undertakes to send round papers, as in this case, they are altogether void. I say, sir, the committee have totally transcended their powers. We have no right to vacate the member's seat for any disobedience to such orders as the committee have given. But how stands the evidence in this case? We have the return of the selectmen before us, which ought to be conclusive.

Mr. Brown, of Boston.—I believe, sir, if we establish this case as a precedent, we shall do something that we shall be sorry for.

If we are to set the assertions of individuals against the legal returns of the selectmen, we shall adopt a very erroneous principle. I do not blame the committee, but I do hope we shall not reconsider this question; and upon evidence, at least doubtful, establish a very dangerous precedent.

Mr. Dutton.—Is it incumbent on the member to prove anything, when the selectmen have furnished a list as in this case, which shows that there were ratable polls enough to establish his right? It has heretofore been enjoined on the petitioners to disprove the member's right to his seat. The committee say, because the member has not complied with the order and done in a limited time what he has since done by producing this list, that his seat shall be vacated. This is making a question of etiquette, not of right.

Mr. Crosby of Billerica.—It is observed that it is uncertain what are ratable polls. I think it probable that the deponents included in their list only the *rated* polls. Besides, the 553 polls were taken by a party; and I think more confidence due to the selectmen, than to volunteer organs of a party. The census has since been taken, and by one not a friend to Mr. Parsons; it gives 612 males, above sixteen years of age.

Mr. Green.— I should not have risen again, had it not been for the extraordinary course this debate has taken. I shall give my vote in the affirmative with as much pleasure and pride as any man can in the negative; not because the member has not complied with any order of the committee, but because I do believe that there were not six hundred ratable polls in Belchertown; and because I do believe that Mr. Parsons would have produced proof that there were this number, if the fact had put it in his power.

Mr. Phelps.—Two years previous to this the selectmen were called upon to produce a list of ratable polls. They did, of above 600 ratable polls, and sent three representatives accordingly; since which the selectmen have been changed; but last year they went on in the same way, and I have no question they were right in both cases.

Mr. Sargent, of Boston.—The idea of taking the ratable polls on a particular day is monstrous. Consider what would be its effect on our fishermen, of whom a great portion are absent from their homes a part of the time. Nor do I believe that the gentlemen are correct, who assert, that they must be taken on the first day of May. I conceive the only question to be, has the town of Belchertown 600 ratable polls? No man will deny that we ought to pay great respect to the constituted authorities, or agree that it ought to be set aside except for fraud or gross errors. As has been said before, the depositions give but the evidence of one man; any one or more might have made a mistake. I will adduce the case of the controverted election of Mr. King, now a member of the honorable senate.

Mr. Sargent proceeded, and stated in substance, that in this case, where he had the honor of being on the committee, the report was, that Mr. King's election ought to

15

be set aside, it being proved to the satisfaction of the committee, that in fact, he had not a majority of votes, by one; but that the house, disposed to respect the return of the selectmen, and considering if they went behind the return, there were some doubts, which, while they existed, operated in favor of the member being duly returned; rejected the report, and admitted his right to his seat.

The question of reconsideration was then put: There were, for reconsidering yesterday's vote, 158, against, 86. The question was then put: Will the house agree to the report of the committee? And the yeas and nays were called for. There appeared, yeas, 158, nays, 86. And the speaker declared that "the seat of Eldad Parsons was vacated."

To this decision, the minority entered their protest, which is recorded on the journal, as follows :—

" The undersigned, members of the house of representatives, impressed by a sense of the obligations imposed upon them faithfully and impartially to discharge their duty, and to the utmost of their power to protect and defend the rights and privileges of the people of this commonwealth, as secured to them by our most excellent constitution; and believing the elective franchise among their first and most essential rights, a right which cannot be violated without the destruction of civil freedom, and the subversion of the genuine principles of a republican form of government; have witnessed, with equal astonishment and regret, the report of the committee on elections upon the election of Eldad Parsons, Esq., one of the members from Belchertown, the proceedings thereon, and a vote of the majority of this house, passed the 21st instant, agreeing to said report, and vacating the seat of said Parsons in this house.

Fully convinced, that said proceedings and vote were not warranted by the evidence exhibited, were an infringement of the rights of the said town of Belchertown, and a violation of the privileges of said Parsons, the undersigned are compelled most solemnly to protest against the same, for the following reasons, to wit :—

1st. Because the said majority, by their said vote, admitted the depositions of individuals in said town, having no official responsibility, to contradict and set aside the regular certificates of the assessors and selectmen, as to the number of ratable

polls, although the certificate of the said selectmen was accompanied by a list of 620 names of persons, certified by them to be males over the age of sixteen and resident in said town, and although it appeared by other evidence, that many persons were omitted on the list furnished by the said deponents.

2nd. Because the said committee on elections, at the last session of the legislature, issued their order to the said Parsons, directing him within two months, to furnish the petitioners against his election with a list of those persons whom he considered ratable polls resident in said town at the time of his election; which said order was issued without the sanction, direction, or knowledge of this house, and therefore not obligatory upon said Parsons.

3rd. Because it further appeared in debate, that Estes Howe, Esq., a member of said committee, during the recess of the legislature, and while the functions of said committee were of course suspended, at the instance of one of the petitioners, made and issued an order to the selectmen or assessors of said town of Belchertown, directing them to furnish and deliver to Henry Mellen or Elihu Sanford, the agents of said petitioners, a list of all the ratable polls in said town on the first day of May last, which said order purported to be dated at Boston, June 5, 1810, at which time the legislature was in session; although the said order was in fact issued at a period long subsequent to said session, and made by said Howe, at his office, in Sutton, in the county of Worcester; and by him sent to Abraham Lincoln, Esq., of Worcester, in said county, and to John Nevers, Esq., of Northfield, in the county of Hampshire, two other members of said committee, who separately signed the same. This proceeding, the undersigned are persuaded, is unparalleled in the annals of the commonwealth, is an assumption of arbitrary power, dangerous to the liberty of the citizen, and subversive of the rights guaranteed by the constitution.

4th. Because the said committee by their report, and the said majority by their vote accepting the same, have assumed the right to vacate the seat of said Parsons, for not complying

with the rules of evidence, and the arbitrary instructions prescribed by said committee, thereby admitting the dangerous and alarming principle, that a town may be disfranchised, and a member of this house deprived of his seat, although the town in their election may not have exceeded the number of members to which they are constitutionally entitled, and although the house have made no inquiry into the supposed neglect or default of said member.

Influenced by these considerations, the undersigned feel themselves imperiously called upon, by the duty they owe to their constituents, by their regard to their own rights, by their inviolable attachment to that form of government, under which they have heretofore enjoyed so much safety and happiness, and by their ardent desire to perpetuate the same, to make their deliberate protest against the said report, and the proceedings and vote thereon; and request that the same may be entered on the journal of this house."